## ANNA GRINDROD, *et al.*, v. HENRY WOLF.

1. **WRITTEN INSTRUMENT,** *Intent of; No Consideration.* Where a wife executes to her husband an instrument in writing, which purports to be a mortgage given for the purchase-money of land, it may be shown to have been given without any consideration, and intended merely to protect the interest that the husband might have in such land after the death of the wife.

2. ———— *Fraudulent Representation.* Where the husband and his attorney tell the son of the wife after her death that such instru-

ment is a valid lien upon the land, when such representation is made to induce the heir to sell his interest in the land to the husband it is false and fraudulent.

3. DEED, *Procured by Fraud, Set Aside.* When a deed to land is obtained by such false and fraudulent representation, for much less than its value, it may be set aside in an action by the party who executed it against the heirs of his grantee.

4. ———— *Deed, Not Set Aside.* Where a party executes a deed to land, and receives therefor all it is reasonably worth, he cannot set aside such deed because he was induced to sell by reason of false and fraudulent representations on the part of the purchaser.

### *Error from Shawnee District Court.*

IN 1876, M. F. Schwoertz and Katherine Wolf were married; both had been married before; Schwoertz had a daughter, Anna; Mrs. Wolf had a son, Henry. After their marriage as aforesaid, they bought lot 71 on Kansas avenue, in the city of Topeka; the deed therefor was executed to the husband. The lot was mostly paid for out of the joint earnings of husband and wife after their marriage; the wife, however, obtained from Germany some money which was applied upon the payment for the lot, and afterward her husband made a deed therefor to the wife. In December, 1882, the wife executed to her husband an instrument in writing in the form of a mortgage, wherein it is stated that the mortgage was given for the purchase-price of the lot. No money was paid for the mortgage, but the parties thereto said that it was given for the purpose of securing the interests of the husband in the lot after the death of the wife, if he should survive her. On August 19, 1884, the wife died, without a will. On August 28, 1884, the mortgage was filed in the office of the register of deeds of Shawnee county, and duly recorded.

On or about September 30, 1884, *Henry Wolf* was induced by Schwoertz and his attorney to execute to M. F. Schwoertz a quitclaim deed for his interest in lot 71 aforesaid, for $300, and also a quitclaim deed for his interest in lots 377 and 379 on Polk street, in the city of Topeka, for $200. On October 27, 1884, Schwoertz died, leaving as his sole heir-at-law the daughter aforesaid. On November 15, 1884, *Henry Wolf*

brought this action against *Anna Grindrod,* (formerly Schwoertz,) and her husband Jerry Grindrod, to recover an undivided one-half interest in the lots aforesaid.

On the trial, the jury rendered no general verdict, but answered questions as follows:

"1. What was the value of the real estate described in the petition, situated on Kansas avenue, at the date of the execution of the quitclaim deed of the plaintiff? *Ans.:* Three thousand dollars.

"2. What was the value of lots numbers 377 and 379 on Polk street, in Watt's addition to the city of Topeka, at the date of the execution of the quitclaim deed by the plaintiff? A. Four hundred dollars.

"3. What was the consideration, if anything, paid by M. F. Schwoertz to Katherine Schwoertz for the execution of the mortgage for twenty-five hundred dollars? A. Nothing.

"4. Was the mortgage placed on record by M. F. Schwoertz after the death of his wife for the purpose of deceiving the plaintiff and inducing him to sell his interest in the property in question to his step-father for less than it was worth? A. Yes.

"5. Was the plaintiff induced to make the quitclaim deed for the property on Kansas avenue to M. F. Schwoertz by false and fraudulent representations? A. Yes.

"6. Was the plaintiff induced to make the quitclaim deed for the Polk street property to M. F. Schwoertz by false and fraudulent representations? A. Yes."

On May 3, 1886, the court ordered the plaintiff forthwith to pay to the clerk of the court the purchase-money received by him of M. F. Schwoertz at the time of the execution of the deeds described in the plaintiff's petition, to wit: $500, with interest at the rate of seven per cent. per annum from September 30, 1884, $55; which order the plaintiff forthwith complied with. Thereupon the court found as a conclusion of law that the plaintiff is the owner of an undivided one-half interest in the real property described in his petition; and adjudged that the defendants execute, acknowledge and deliver to plaintiff good and sufficient deeds for an undivided one-half of lots 377 and 379 on Polk street in Watt's addition to the city of Topeka, and also for an undivided one-half of

a portion of lot 71 on Kansas avenue in the city of Topeka, etc. The defendants bring the case here for review.

*Stumbaugh, Arnold & Hilton,* for plaintiffs in error.

*G. W. Carey,* and *E. E. Chesney,* for defendant in error.

Opinion by HOLT, C.: The first and most serious question that confronts us is to determine the nature of the written instrument that purports to be a mortgage, given for the purchase-money of lot number seventy-one. If it was a mortgage, then Henry Wolf would have been entitled to one-half of the value of the property after the mortgage had been paid. At the time of the execution of his deed to Schwoertz, the mortgage would have amounted to $2,950. The jury found the value of the property was only $3,000; Wolf, receiving $300 for his share, certainly would have no cause to complain if the mortgage had been valid. It is established that no money was passed for the mortgage. It is claimed by defendants that if Mrs. Schwoertz intended to make this as a gift or donation to her husband, no one except existing creditors could complain of such gift or donation, and that the heir could not question his mother's right to dispose of her own property. We think that statement of the law is correct; but was it intended as a gift or a donation? Mr. Schwoertz said he wanted it to preserve his interests in this property if he should outlive his wife; Mrs. Schwoertz, on being told that he would have a half-interest in the estate under the laws of Kansas, replied that Mr. Schwoertz wanted it this way. Mr. and Mrs. Schwoertz both stated to Judge Carey at the time he took the acknowledgment, that it was given for the purpose of preserving the interests of Mr. Schwoertz in the land if he should survive his wife. Mrs. Schwoertz evidently did not intend it to be a mortgage, and Schwoertz himself did not then pretend it would have the effect of one. His heirs are now claiming it to be quite a different instrument from what he told his wife it was when he obtained her signature to it. It was not at the time of its execution believed by either party that it

should have any force until after the death of Mrs. Schwoertz. In other words, this instrument was to have no effect during the lifetime of Mrs. Schwoertz, but was to spring into existence as a valid instrument at her death. We believe that such an instrument is not a contract, but a testamentary paper, and as such is void. It is neither a will nor a contract. It is not a will, because it was not executed in conformity to the statute. It is not a contract, because it was not intended to have any operation until after the death of the maker. It was an instrument that might be revoked at any time; was without force; not intended as a gift, but intended to secure certain rights of the husband to the property after the wife's death. She probably believed it would give her husband, as her heir, his one-half interest in the lot. He, having already consulted an attorney, evidently intended at that early day to cut off the possible claim of young Wolf, as one of his wife's heirs, to the property. This disposes of the question in the case which has given us the most trouble.

This instrument was not a mortgage in reality, upon lot number seventy-one. The statements of Stumbaugh and Schwoertz to that effect were false and fraudulent, and were presumably relied upon by Wolf, and the jury found that they were the controlling influences which induced him to execute the deed, as in the fifth finding they state it was by false and fraudulent representations that Schwoertz obtained it. The evidence amply justified this finding.

The defendants contend that the offer of Schwoertz to give Wolf $500 as a starter, and do more for him in the future, was not in law a false and fraudulent representation. This is probably correct. Any promise of what a party says he intends to do at some future time, although in fact he never intends to fulfill such promise, is not a false and fraudulent statement in law, however reprehensible it may be in morals. A representation, to be a false and fraudulent one, must be concerning some present existing fact, or some past completed act. This deed was given because Wolf thought the pretended mortgage was a valid and subsisting lien upon the lot for

nearly $3,000. If that had been true, his action would have been to his advantage; he would have made a good trade.

The defendants complain of the general scope of the instructions given the jury. We shall consider those only which were necessary to explain the evidence applicable to the findings submitted to the jury. Those given outside such findings will not be considered here. It is the province and duty of the trial court, where an action is only partially tried upon questions of fact submitted to a jury and other issues of fact reserved by the court for its own determination, to instruct upon those questions only which are submitted, and if the instructions that are given on those matters are sufficient and proper, neither party has occasion to complain. In this action only six questions were submitted, which did not reach all the issues raised by the pleadings and evidence introduced to support them.

The fifth instruction is complained of. It is:

"If you find from the evidence that the purchase of this property was fair and honest, and that defendants or their attorneys made no false or fraudulent representations for the purpose of securing these deeds, then the plaintiff is not entitled to recover in this action."

Whether this shifts the burden of proof from the plaintiff to the defendants on this particular question, would seem to be of very little importance in the face of a finding of the jury virtually to the effect that it was not fair and honest, being induced by false and fraudulent representations. We agree with the defendants, that representations must be both false and fraudulent to constitute such fraud in a conveyance as would be sufficient to set it aside on that ground, and probably the instruction did not state the law correctly; but how could it injure the defendants, when the jury did find that the representations were both false and fraudulent? We think that finding establishes the fact that the error could not have possibly prejudiced the defendants.

We see no error that would require a reversal of this case. The judgment commends itself to us as so fair and just, that

we have no hesitation in affirming it. By a perusal of the evidence brought here, we are irresistibly led to believe that the matter of the division of the property which Mr. and Mrs. Schwoertz might leave, had been fully discussed and mutually agreed upon between them. It appears that most of it was the joint earnings of both, and very naturally they agreed that one-half should descend to his daughter, and the other half to her son. It is shown that they left $3,400 in real estate, and at least $3,000 in personal property. If it should be held that the instrument executed by Mrs. Schwoertz was a mortgage, then his daughter Anna would receive $5,900, and her son Henry, $500. That amount, too, it seems was paid him out of the money arising from his mother's life insurance.

What we have said heretofore has had reference solely to the sale of lot number seventy-one on Kansas avenue. So far as the judgment has reference to the Polk street property, it will be modified; as there is no evidence to show that there were any false and fraudulent representations in relation thereto, unless a possible inference might be drawn from the fact that the sale was made at the same time the sale of lot number seventy-one was effected. We do not think, however, it can be fairly drawn from the evidence. Moreover, it is conclusively established by the findings of the jury that plaintiff obtained full value for the property on Polk street at the time of sale, and for that reason such conveyance ought not to be disturbed.

We recommend that the amount of $200 and interest thereon from the date of sale be paid over by the clerk of the district court to the order of the plaintiff; in all other respects that the judgment be affirmed: the costs of this court to be equally divided.

By the Court: It is so ordered.

All the Justices concurring.